UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DUSTIN FOWLER, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 964 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| THE ILLINOIS SPORTS FACILITIES AUTHORITY and CHICAGO WHITE SOX, LTD., | ) ) | |
| | ) | |
| Defendants. | ) | |

**M<span>EMORANDUM</span> O<span>PINION AND</span> O<span>RDER</span>**

Dustin Fowler, a professional baseball player, brought this suit against the Illinois Sports Facilities Authority and Chicago White Sox, Ltd. (together, "the White Sox") in the Circuit Court of Cook County, Illinois, after he was seriously injured while playing at Guaranteed Rate Field, the White Sox's stadium. Doc. 1-1. The complaint characterizes Fowler's claims as negligence claims arising under Illinois law. Defendants removed the suit to this court under 28 U.S.C. § 1441, asserting that federal question jurisdiction lies under 28 U.S.C. § 1331 because Fowler's claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and thus in fact are federal claims. Doc. 1. Fowler moves to remand. Doc. 32. The motion is granted.

**Background**

On June 29, 2017, the New York Yankees played the White Sox at Guaranteed Rate Field. Doc. 1-1 at ¶¶ 6-8. Fowler made his Major League debut that day, playing right field for the Yankees. *Id*. at ¶ 9. When Fowler ran into the wall on the right foul line while attempting to catch a foul ball, his knee made contact with a metal electrical box, resulting in serious injury that required surgery and ended his season. *Id*. at ¶¶ 18-19. According to Fowler, the metal box

1

was positioned behind and between the wall and railing next to the right foul line, without any kind of padding or covering. *Id.* at ¶¶ 12, 14, 15, 17. Fowler sued the White Sox, alleging that the club negligently installed the box in a position where it was undetectable and posed an unreasonable risk of injury to players. *Id.* at ¶¶ 25, 34.

The terms of Fowler's employment as a professional baseball player are governed by the 2017-2021 Basic Agreement, a collectively bargained agreement between the Major League Clubs and the Major League Baseball Players Association. Doc. 1 at ¶ 3.

## Discussion

As noted, the White Sox premise federal jurisdiction on the ground that Fowler's negligence claims, which he characterizes as arising under Illinois law, are completely preempted by § 301 of the LMRA. *See* 29 U.S.C. § 185(a) (providing that federal law governs "[s]uits for violation of contracts between an employer and a labor organization."). The complete preemption doctrine "converts an ordinary state common-law complaint into one stating a federal claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law" for purposes of 28 U.S.C. §§ 1331 and 1441(a). *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) (internal quotation marks omitted); *see also Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 894 (7th Cir. 2013).

Settled precedent holds that § 301 completely preempts state law claims "founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394 (internal quotation marks omitted); *see also Nelson v. Stewart*, 422 F.3d 463, 467-69 (7th Cir.

2005); *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285-86 (7th Cir. 2001) (en banc). Complete preemption under § 301 "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract." *Crosby*, 725 F.3d at 797. "[T]o determine whether a purported state-law claim 'really' arises under Section 301, a federal court must look beyond the face of [the] plaintiff's allegations and the labels used to describe her claims and evaluate the *substance* of plaintiff's claims." *Id*. at 800 (alterations and internal quotation marks omitted).

Section 301 preemption is not boundless. "[A] state-law claim is 'completely preempted' only when it is inextricably intertwined with consideration of the terms of the labor contract." *Ibid*. (internal quotation marks omitted). A state law claim is not completely preempted where a defendant contending that the claim requires interpretation of a CBA advances a frivolous or insubstantial reading of the agreement; rather, preemption applies only where the defendant's interpretation of the CBA is arguable or plausible. *See Baker v. Kingsley*, 387 F.3d 649, 659 (7th Cir. 2004) ("Because defendants' interpretation is plausible, and demonstrates a genuine dispute between the parties that can affect liability, it is a sufficient basis for preemption."); *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 692 (9th Cir. 2001) ("A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility."); *Boogaard v. Nat'l Hockey League*, 126 F. Supp. 3d 1010, 1017 (N.D. Ill. 2015), *aff'd*, 891 F.3d 289 (7th Cir. 2018).

Under Illinois law, the elements of a negligence claim are "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012); *see also Johnson*

*v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 441 (7th Cir. 2009) (same). Pertinent here, "[a] possessor of land … owes its invitees a common law duty of reasonable care to maintain its premises in a reasonably safe condition." *Clifford v. Wharton Business Grp.*, 817 N.E.2d 1207, 1214 (Ill. App. 2004); *see also Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (same). "[I]t is axiomatic that no legal duty arises unless the harm is reasonably foreseeable." *Clifford*, 817 N.E.2d at 1214; *see also Snow v. Power Constr. Co.*, 78 N.E.3d 587, 606 (Ill. App. 2017) (same); *Buerkett v. Ill. Power Co.*, 893 N.E.2d 702, 709 (Ill. App. 2008) (same).

As noted, Fowler alleges that the White Sox violated their duty of care when they installed a hidden, unpadded box in the wall on the right foul line. The White Sox contend that Fowler's claim is preempted by § 301 because resolving the claim requires interpretation of Article XIII of the Basic Agreement. Doc. 35 at 6-7. Article XIII establishes a joint Safety and Health Advisory Committee, "comprised of an equal number of members representing the Association and representing the Clubs," "to deal with emergency safety and health problems as they arise" and "to engage in review of, planning for and maintenance of safe and healthful working conditions for Players." Doc. 1-2 at p. 70, Art. XIII(A)(1). Committee meetings can be called by any member who believes an emergency safety problem requires attention, and otherwise occur at least once a year "for purposes of review and planning." *Id*. at p. 70, Art. XIII(A)(2). The Committee can make non-binding recommendations to the clubs and players. *Id*. at p. 71, Art. XIII(A)(3). The Players Association is not required to raise a safety issue with the Committee before filing a formal grievance in arbitration. *Id*. at p. 71, Art. XIII(A)(4).

The White Sox argue that, by establishing the Committee and empowering it to plan for and maintain safe working conditions for the players, Article XIII "lessens the scope of the

4

White Sox's duty" to independently ensure the safety of the facilities, as "they c[an] reasonably rely on the Joint Committee's guidance in that regard." Doc. 35 at 17. Put another way, the White Sox conclude from Article XIII that, absent any objection from the Committee, the injury that Fowler suffered when he ran into the box was not reasonably foreseeable—and therefore that his negligence claim fails. *See Clifford*, 817 N.E.2d at 1214.

If the White Sox's argument were plausible, then a court would need to interpret Article XIII to determine whether (or to what extent) the White Sox owed Fowler a duty of care, and Fowler's negligence claim would be completely preempted. *See Boogaard*, 126 F. Supp. 3d at 1016-25; *Nelson v. Nat'l Hockey League*, 20 F. Supp. 3d 650, 653-58 (N.D. Ill. 2014), *aff'd*, 891 F.3d 289 (7th Cir. 2018). But the White Sox's reading of Article XIII is not plausible. No club could have reasonably believed, based on the text of Article XIII, that the Committee would be able to identify safety risks so comprehensively and effectively that, as long as the Committee raised no objections, the club could simply assume that nothing in its premises posed an unreasonable risk to players.

Comparison with *Duerson v. National Football League*, 2012 WL 1658353 (N.D. Ill. May 11, 2012), and *Dent v. National Football League*, 2014 WL 7205048 (N.D. Cal. Dec. 17, 2014), the two cases upon which the White Sox most heavily rely, helps to illustrate the point. In *Catalano v. Menard Inc.*, 2017 WL 2720432 (N.D. Ill. June 23, 2017), another case cited by the White Sox, the court held that a storeowner had no duty to ensure the safety of its automatic sliding doors because the technicians it paid to service the doors had reported that they were in working order. *Id.* at *6. As the court explained, relying on *Cunis v. Brennan*, 308 N.E.2d 617, 619 (Ill. 1974), the storeowner could not have foreseen that the doors would cause injury because

5

a non-party who was better qualified to evaluate them had concluded that they were safe. *Catalano*, 2017 WL 2720432, at *6.

That principle explains the results in *Duerson* and *Dent*. In *Duerson*, the estate of a former Chicago Bears player alleged that the National Football League ("NFL") negligently failed to inform him of the risks of brain injury after repeated concussions, 2012 WL 1658353, at *1, and in *Dent*, a group of former players alleged that the league negligently failed to curb excessive prescription of pain medication by the clubs, 2014 WL 7205048, at *1. In both cases, the courts found that the players' state law claims were completely preempted by § 301 because certain provisions in the NFL's collective bargaining agreement could "be interpreted to impose a general duty on the NFL clubs to diagnose and treat" players' medical conditions, which would allow the league to "reasonably rely on the clubs" to appropriately handle the players' medical issues. *Duerson*, 2012 WL 1658353, at *4; *see also Dent*, 2014 WL 7205048, at *8 ("[B]ecause the CBAs expressly and repeatedly allocate so many health-and-safety duties to the clubs, the CBAs can fairly be interpreted, by implication, to negate any such duty at the league level."). Those CBA provisions required each club to employ an orthopedic surgeon as a club physician, to pay the cost of all medical care provided to players by club staff, and to have a club physician conduct a pre-season examination of each player. *See Duerson*, 2012 WL 1658353, at *4; *Dent*, 2014 WL 7205048, at *4-5. From those provisions, the courts explained, one could reasonably conclude that the clubs—who directly employed medical staff to serve the players—bore the primary responsibility for the players' medical care. And as in *Catalano*, the NFL could reasonably rely on the clubs and their expert employees, who were much better positioned to monitor the players' health than the league.

That principle is inapposite here. Article XIII leaves no doubt that the clubs were in a vastly better position than the Committee to assess the safety of their own premises. The clubs did not give up any control over their premises to the Committee, nor did they even grant it any consistent supervisory role. The Committee may act only if called to session by one of its members, or in one of its annual meetings "for purposes of review and planning." Doc. 1-2 at p. 70, Art. XIII(A)(2). And Article XIII acknowledges that players can take their safety concerns straight to arbitration, without attempting to convene the Committee. *Id*. at p. 71, Art. XIII(A)(4). When the Committee does address a safety concern, its recommendations are only advisory, leaving final authority over the premises with the clubs. *Id*. at p. 71, Art. XIII(A)(3). It would have been wholly unreasonable for any club to delegate its responsibility to ensure the safety of its playing field to the intermittent and weak Committee described in Article XIII.

That conclusion applies with particular force to a small, hidden hazard like the metal box that injured Fowler. Because the box was hidden from players' view (as Fowler alleges, Doc. 1-1 at ¶ 17, and the White Sox do not dispute), no player could have realized the risk it posed and attempted to convene the Committee to address the problem. And it strains credulity to suppose (and the White Sox do not assert) that the Committee would examine such granular details of individual ballparks in its occasional meetings "for purposes of review and planning." It follows that the White Sox's interpretation of Article XIII is not plausible, that the Basic Agreement therefore will not affect the White Sox's duty of care to Fowler, and therefore that Fowler's claims are not completely preempted under Section 301. *See Baker*, 387 F.3d at 659; *Cramer*, 255 F.3d at 692.

The White Sox also argue, briefly, that determining Fowler's damages will require interpretation of the CBA provisions stating that players shall receive their full salary and

7

"reasonable medical and hospital expenses" while injured. Doc. 35 at 26. But those provisions determine the clubs' obligations to *their own* injured players, not the obligations of clubs that allegedly injure another teams' player, which is the situation presented here. Doc. 1-2 at 349 (providing, in the Uniform Player's Contract that players enter into with the individual clubs for which they play, that a player is entitled to "reasonable medical and hospital expenses incurred by reason of the injury" on the conditions that written notice of the injury is "served upon and received by the Club" and that the club may designate the player's health care providers).

## Conclusion

Because Fowler's claims are not completely preempted by § 301 of the LMRA, they are true state law claims. And because complete preemption is the sole ground on which the White Sox premise removal, Doc. 1, any other grounds for removal have been forfeited. *See W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 852 (N.D. Ill. 2014) (holding that "the *proponent* of subject matter jurisdiction, as with any party that bears the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction") (citing cases). Fowler's motion to remand accordingly is granted. The case is remanded to the Circuit Court of Cook County, Illinois.

June 29, 2018

_____
United States District Judge